# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JACK HAYNES and MELISSA HAYNES, | ) ) | |
| | ) | No. _____ |
| Plaintiffs, | ) | |
| | ) | **JURY DEMAND** |
| v. | ) | |
| | ) | |
| KALEON GLOBAL, LLC, NATHAN BAILEY, CHRISTIAN A. LEAKE, and RANDY FERRAGINA, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

This is an action to hold Defendants accountable at law and in equity for their misconduct and fraudulent investment scheme, a Ponzi scheme perpetrated by Defendants.

## JURISDICTION AND VENUE

1.      Jack Haynes and Melissa Haynes (collectively, "Plaintiffs" or "the Haynes") are citizens of the State of Tennessee, residing in Davidson County.

2.      Kaleon Global, LLC ("Kaleon") is a Delaware limited liability company with its principal place of business at 354 Downs Blvd., Suite 106, Franklin, Tennessee 37064. Kaleon may be served through its Registered Agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Upon information and belief, at least three of the members of Kaleon are citizens of Tennessee.

3.      Nathan Bailey ("Bailey") is a resident of and domiciled in the State of Tennessee. At all times relevant herein, Bailey represented himself as the managing member of Kaleon.

4.      Christian A. Leake ("Leake") is a resident of and domiciled in the State of Tennessee. Upon information and belief, he is a member of Kaleon.

5.      Randy Ferragina ("Ferragina") is a resident of and domiciled in the State of Tennessee. Upon information and belief, he is a member of Kaleon.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States, specifically the 18 U.S.C. § 1964. This Court has supplemental jurisdiction over all other claims herein pursuant to 28 U.SC. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Haynes' claims occurred in this District.

8.      This Court has personal jurisdiction over Defendants under Tenn. Code Ann. §§ 20-2-214(a)(1) and 20-2-223(a)(1) because Plaintiffs' causes of action arise from Defendants transacting business in Tennessee. The Court also has personal jurisdiction over Defendants under Tenn. Code Ann. §§ 20-2-214(a)(2), -(a)(5), and 20-2-223(a)(3). Finally, the Court may exercise personal jurisdiction over Defendants under Tenn. Code. Ann. § 20-2-225 because the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution.

## FACTS

9.      In March 2019, Bailey, on behalf of Kaleon, approached the Haynes about an "investment opportunity."

10.     Bailey represented that the Haynes could invest $100,000 with Kaleon and that the Haynes' $100,000 investment would then be pooled with other investors' funds for a total investment of $1,000,000 by Kaleon in what the Haynes were told was a precious stones trading opportunity.

2

11.     Bailey represented to the Haynes that their $100,000 investment with Kaleon would be risk free because it would be protected in a bank blocked account.

12.     Bailey further represented that the Haynes would receive a 50% monthly return on their $100,000 investment over the course of the term of their investment and receive a full return of their initial $100,000 investment following completion of the precious stones trade.

13.     Bailey represented that this was a legitimate investment opportunity presented by Kaleon that was thoroughly vetted and that he, himself, was personally investing funds with Kaleon as part of the pooled investment.

14.     On March 28, 2019, Bailey presented the Haynes with a document entitled "Mutual Non-Disclosure Agreement." A copy of the Mutual Non-Disclosure Agreement is attached hereto as Exhibit A.

15.     The Mutual Non-Disclosure Agreement (the "Agreement"), which purports to be between Jack Haynes and Kaleon, reflects that the parties are evaluating a transaction "involving the purchase and/or sale" of a "trade opportunity involving precious stones through Kaleon Global."

16.     The Agreement describes the investment opportunity as a commodities private trading platform opportunity involving precious stones and provides that the invested funds will be held in an account with Kaleon as the account beneficiary. It further provides that the invested funds will be blocked by the Bank Administrator preventing any withdrawals, transfers, or collateralizations to be performed on the money in the bank without the approval of Kaleon.

17.     In addition, the Agreement provides that the Haynes' investment will stay blocked in the account until completion of the trade, and that the final distribution payment will include all remaining profits and a full recoupment of investment basis to the investor.

3

18.     In a section of the Agreement entitled "Notices," the Agreement identifies Christian A. Leake as "Managing Partner" of Kaleon. *See* Exhibit A at Section 6.

19.     Bailey signed the Agreement on behalf of Kaleon.

20.     In May 2019, Bailey informed the Haynes that they would need to sign an additional document for the investment with Kaleon. Bailey presented the Haynes with a document entitled "Memorandum of Understanding and Commission Agreement" (hereinafter the "MOU") that is dated May 3, 2019 and "The Opportunity" that is dated May 29, 2019. A copy of the "Memorandum of Understanding and Commission Agreement" and "The Opportunity" is attached hereto as Collective Exhibit B.

21.     The MOU provides that it is an agreement between Kaleon, "as represented by Nathan Bailey, Managing Member, with offices located at 354 Downs Blvd, Suite 106, Franklin, TN 37064" as the "Company," and Jack Haynes as the "Investor." *See* Collective Exhibit B at 1. The MOU provides that it is the intention of Kaleon to "enter into an investment transaction to further common business interests" and that Kaleon "has the capacity and ability to provide [*sic*] enter into certain high yielding Private Placement for Profit trade platforms." *See id.* at 3. Finally, the MOU provides that, in order to participate in the investment, the Haynes were required to wire $100,000 to Kaleon's bank account at Studio Bank in Nashville, Tennessee. *See id.* at 4.

22.     Again, the investment opportunity was described as a commodities private trading platform opportunity in which the invested funds will be held in an account with Kaleon as the account beneficiary, that the invested funds will be blocked by the Bank Administrator preventing any withdrawals, transfers, or collateralizations to be performed on the money in the bank without the approval of Kaleon, that the Haynes' investment will stay blocked in the

4

account until completion of the trade, and that the final distribution payment will include all profits and a full recoupment of investment basis to the investor. *See id.* at 8.

23.     Bailey signed the MOU as Managing Member of Kaleon.

24.     Based upon Bailey's and Kaleon's representations, including the representation that Bailey personally was also investing with Kaleon, and at the direction of Bailey, the Haynes wired $100,000 to a bank account purportedly held by Kaleon Global in May 2019 for the purpose of the aforementioned investment opportunity sold to them by Bailey and Kaleon.

25.     In the months that followed, the Haynes received periodic reassuring updates from Bailey on behalf of Kaleon.

26.     On September 23, 2019, Bailey emailed the Haynes that "we spoke to the trade desk and they explained to me that us and six other investors were delayed. Apparently London shuts down a large chunk of the month of August" and that an "updated payout timeline" would be coming in mid-October. Bailey further explained that "they have always paid out, sometimes delays happen but they always have paid out to investors according to our contact with the trade . . . I'm confident this will payout. We're on top of it getting updates regularly at this point. I will keep everyone posted as I hear from them." Bailey sent this email from his Kaleon email address and signed the email as Managing Partner of Kaleon.

27.     On October 18, 2019, Bailey emailed the Haynes to inform them that "We have a call scheduled today to get an update on the payout timeframe from the investment desk. I'll keep you posted on the status as soon as we find out." Again, Bailey sent this email from his Kaleon email address and signed the email as Managing Partner of Kaleon.

28.     On February 8, 2020, Bailey emailed the Haynes that "We reached out Monday for an update. We receive[d] a response last night that they'll [*sic*] checking back in with the

5

investment department this Tuesday to get a status update. Once I have more information, I'll let you know." Again, Bailey sent this email from his Kaleon email address and signed the email as Managing Partner of Kaleon.

29.     On March 26, 2020, Bailey emailed the Haynes purporting to forward an email "from the trader to our trade contact." The email provides that "the bankers are no longer in their building due to the shut down from the coronavirus outbreak. We were hoping it would get done this past Tuesday and the bankers are hoping to have a plan in place to finish the transaction either with Citibank or Mellon Bank assisting Citibank in moving the funds to the paymaster for the client by the end of this week. Everyone is confident it will get done and it will be a great moneymaker for everybody involved." Again, Bailey sent this email from his Kaleon email address and signed the email as Managing Partner of Kaleon.

30.     On June 15, 2020, Bailey emailed the Haynes that "Today marked the end of the contract for the investment and they wanted to push it out another two weeks. So we talked about it as a team, considering all of our investors, and put in a request for a return of the basis." According to Bailey, Kaleon sent "an official letter request for the return and the group has responded with a deadline window of receipt sometime between July 24th-31st." Again, Bailey sent this email from his Kaleon email address and signed the email as Managing Partner of Kaleon.

31.     On June 19, 2020, Bailey emailed the Haynes that "at this point, there's not an option to get the funds back any sooner than the window of time that was originally scheduled of 7/24-7/31." Again, Bailey sent this email from his Kaleon email address and signed the email as Managing Partner of Kaleon.

6

32.     In July 2020, Bailey called Jack Haynes to inform him that there had been further delays.

33.     On August 11, 2020, Jack and Melissa Haynes met in-person with Bailey. During the meeting, Bailey represented, for the first time, that the funds Kaleon invested, including the Haynes' $100,000, were frozen in a Wells Fargo account belonging to a Colorado lawyer as part of an investigation by the Commodity Futures Trading Commission. Despite this purported development, Bailey represented to the Haynes that Kaleon had additional funds available that were not invested and that could be used to return the Haynes' investment.

34.     Bailey also admitted to the Haynes that, despite his previous representation, he had not actually invested any of his own money with Kaleon as part of this investment. Bailey further stated that, rather than personally investing his own funds, he and Kaleon expected to receive a commission on the Haynes' investment.  Moreover, during this August 11 meeting, Bailey informed the Haynes for the first time that Leake and Ferragina were the other members of Kaleon.

35.     Upon information and belief, Bailey, Leake, and Ferragina are not licensed with the U.S. Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority, ("FINRA"), or the Commodity Futures Trading Commission ("CFTC"), nor are they otherwise licensed to sell or trade securities or commodities or as a broker/dealer of securities or commodities.

36.     To date, the Haynes have not received any return on their $100,000 investment nor have Defendants returned the Haynes' initial $100,000 investment, despite promising to do so.

37.     On information and belief, Defendants never invested Plaintiffs money in the investment opportunity and instead, operated a fraudulent Ponzi scheme to defraud Plaintiffs and other investors, using Plaintiffs' investment funds to pay off other investors and intending to use other investors' funds to pay off Plaintiffs.

38.     On information and belief, each of the Defendants is a member of Kaleon Global and worked in concert to manage Kaleon Global's solicitation of investments. Defendants defrauded Plaintiffs through the aforementioned representations, which were false and known to be false when made by Defendants through their agent, Nathan Bailey. Defendants' misrepresentations induced Plaintiffs to transfer funds to Defendants for investment, which they did not invest and instead misappropriated.

39.     Defendants fraudulently concealed from Plaintiffs the facts giving rise to the causes of action set forth hereinafter. Defendants took affirmative action to conceal their fraud from Plaintiffs or remained silent and failed to disclose material facts giving rise to causes of action, despite a duty to do so. When Plaintiffs raised questions, Defendants provided false or deceitful explanations or promised remediation in order to induce – and thereby did induce – Plaintiffs to delay seeking legal recourse. Defendants had knowledge of the facts giving rise to the causes of action.  All potentially applicable statutes of limitations were tolled by Defendants' fraudulent concealment, by the discovery rule, by promises of remediation, or by other applicable tolling doctrines until at least August 11, 2020.

40.     As a result of Defendants' fraudulent misrepresentations, Plaintiffs have suffered harm.  Plaintiffs Jack and Melissa Haynes bring this action to recover damages for Defendants' fraudulent actions.

8

## COUNT I

**(Violation of the Racketeer Influenced and Corrupt Organizations Act
18 U.S.C. § 1961 *et seq.*)**

41.     The allegations of paragraphs 1 through 40 of the Complaint are incorporated herein by reference.

42.     The Racketeer influenced and Corrupt Organizations Act of 1970, codified at 18 U.S.C. § 1961, *et seq.* ("RICO") provides civil remedies for persons injured by the acts of persons operating an enterprise engaged in a pattern of racketeering activities.

43.     Plaintiffs Jack and Melissa Haynes are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

44.     Defendants Nathan Bailey, Christian A. Leake, and Randy Ferragina are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

45.     At all times relevant to this Complaint, Kaleon was an "enterprise," as defined by 18 U.S.C. § 1961(4), within the meaning and purpose of RICO.

46.     At all times relevant to this Complaint, Defendants, through Kaleon (a Delaware limited liability company), engaged in interstate commerce by soliciting funds from individuals such as Plaintiffs under the guise of pooling those funds for investment by Kaleon and by repeatedly communicating with individuals, such as Plaintiffs, in furtherance of Defendants' investment scheme.

47.     At all times relevant herein, Bailey, Leake, and Ferragina were members of, associated with, and the managers and operators of Kaleon.

48.     Defendants willfully and intentionally committed, and conspired with each other to commit, racketeering activities by means of wire fraud as defined by federal law, 18 U.S.C. §

1343, namely conspiring to use Kaleon as a vehicle for their illicit Ponzi scheme and perpetrating their scheme over the internet and via electronic mail.

49.     Indeed, Defendants engaged in targeted and prolonged email communications with Plaintiffs, on behalf of themselves and Kaleon, that facilitated their fraudulent investment scheme.

50.     Defendants Bailey, Leake, and Ferragina conducted and participated directly and indirectly in the affairs of Kaleon through multiple continuous and related acts of racketeering activity spanning a period of many months against Plaintiffs on multiple occasions so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and 1962.

51.     Defendants profited from their racketeering activities described herein in violation of 18 U.S.C. § 1962.

52.     Defendants have used Kaleon to conduct a pattern of racketeering activities in violation of 18 U.S.C. § 1962. Defendants' actions in furtherance of this scheme are intentional and coordinated, and each individual Defendant has affirmatively participated in the enterprise as described herein.

53.     Plaintiffs have been injured by Defendants' violation of 18 U.S.C. § 1962. In particular, Plaintiffs suffered concrete financial loss due to Defendants' actions.

54.     Plaintiffs are entitled to all remedies available for violation of RICO, including but not limited to treble damages and costs of this action, as provided in 18 U.S.C. § 1964(c).

55.     Plaintiffs reserve the right to allege other violations of law that constitute unlawful acts or practices under RICO.

## COUNT II

### (Violation of the Tennessee Consumer Protection Act
### Tenn. Code Ann. § 47-18-101 *et seq.*)

56.     The allegations of paragraphs 1 through 55 of the Complaint are incorporated herein by reference.

57.     Defendants violated Tenn. Code Ann. § 47-18-104 by, among other things, engaging in a Ponzi scheme, defined as a fraudulent investment scheme in which money placed by later investors pays artificially high dividends to the original investor, thereby attracting even larger investments.

58.     Defendants actions described herein were knowingly and intentionally done in bad faith with the intent of deceiving Plaintiffs.

59.     As a direct and proximate result of Defendants' violation of the Tennessee Consumer Protection Act, Plaintiffs have incurred damages.

60.     Because of Defendants' unlawful, deceptive, and bad faith actions in violation of the Tennessee Consumer Protection Act, Plaintiffs are entitled to treble damages together with costs and attorneys' fees pursuant to Tenn. Code Ann. § 47-18-109.

## COUNT III

### (Fraudulent Misrepresentation)

61.     The allegations of paragraphs 1 through 60 of the Complaint are incorporated herein by reference.

62.     Defendants intentionally orchestrated and executed a scheme to defraud Plaintiffs.

63.     Defendants falsely and intentionally misrepresented material facts to Plaintiffs to induce Plaintiffs to wire $100,000 to Kaleon for purposes of being pooled as part of a larger investment by Kaleon and in furtherance of Defendants' continued investment scheme.

11

64.     Without limitation as to the misrepresentations already alleged and described above, Defendants' intentional and false misrepresentations to Plaintiffs include, but are not limited to, the following:

a.  Defendants misrepresented an investment opportunity by which the Haynes could invest $100,000 with Kaleon that would then be pooled with other investors' funds for a total investment of $1,000,000 by Kaleon;

b.  Defendants misrepresented the purchase and/or sale of a trade opportunity through Kaleon Global;

c.  Defendants misrepresented that the Haynes' $100,000 investment with Kaleon was risk free because it was protected in a bank blocked account preventing any withdrawals, transfers, or collateralizations to be performed on the money in the bank without the approval of Kaleon until completion of the trade;

d.  Defendants misrepresented that the Haynes would receive a 50% monthly return on their $100,000 investment over the course of the term of their investment and receive a full return of their initial $100,000 investment following completion of the trade;

e.  Defendants misrepresented that this was a legitimate investment opportunity presented by and through Kaleon that was thoroughly vetted and that Defendants possessed the requisite licensure, qualifications, skill, and experience in furtherance thereof;

f.  Defendants misrepresented that Kaleon was a legitimate entity capable of performing the investment advertised, including the capacity and ability to enter into certain "high yielding Private Placement for Profit trade platforms;"

g.  Defendants misrepresented that Kaleon invested the Haynes' funds, as part of larger investment, in a private trading platform;

h.  Defendant Bailey misrepresented to the Haynes that he, himself, had personally invested money with Kaleon as part of the same investment opportunity presented to the Haynes;

i.  Defendants misrepresented the nature of the investment;

j.  Defendants repeatedly misrepresented that delays in payout on the investment through Kaleon were unforeseeable or unavoidable and that payout would be forthcoming;

k.  Defendants misrepresented that they were in communication with a trade desk

and various banks regarding the status of the investment; and

l.    Defendants misrepresented that invested funds, including the Haynes' $100,000, were frozen in a Wells Fargo account belonging to a Colorado lawyer as part of an investigation by the Commodity Futures Trading Commission.

65.    On information and belief, each of these representations was false, and at the time Defendants made these misrepresentations to Plaintiffs, Defendants knew such representations were false.

66.    Defendants made these misrepresentations with the intent that Plaintiffs would act and rely upon the misrepresentations.

67.    Plaintiffs reasonably and in good faith relied upon and were induced by Defendants' misrepresentations.

68.    As a direct and proximate result of Defendants' misrepresentations, Plaintiffs have sustained damages and losses.

## COUNT IV

### (Negligent Misrepresentation)

69.    The allegations of paragraphs 1 through 68 of the Complaint are incorporated herein by reference.

70.    Defendants negligently supplied false information to Plaintiffs, including the misrepresentations specified in Paragraph 64 above.

71.    Defendants provided this false information in the course of their business, with regard to the investment opportunity transaction in which they had a financial interest, specifically the receipt of Plaintiffs' $100,000 for the investment opportunity sold to Plaintiffs.

72.    Plaintiffs justifiably relied on the information and representations made by Defendants to Plaintiffs without knowledge of their falsity.

13

73.    As a direct and proximate result of Defendants' false information and negligent misrepresentations, Plaintiffs have sustained damages.

## COUNT V

### (Conversion)

74.    The allegations of paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

75.    As managing members of Kaleon, each of the Defendants intentionally and knowingly exercised and conspired to exercise dominion, control, and responsibility over monies and funds provided by Plaintiffs for investment by Kaleon.

76.    In direct contravention of Kaleon's agreement with Plaintiffs and its representations to Plaintiffs, Defendants intentionally and knowingly misappropriated and conspired to misappropriate Plaintiffs' investment funds provided to Kaleon by failing to invest Plaintiffs' money in the investment opportunity or any other meaningful or legitimate way and using Plaintiffs' funds for an illegitimate purpose and a purpose contrary to that intended in Plaintiffs' investment in Kaleon's investment opportunity.

77.    Defendants' actions amount to conversion of the Plaintiffs' funds.

78.    As a direct and proximate result of the tortious acts of Defendants, Plaintiffs are entitled to compensatory damages in an amount of $100,000.

79.    Because of Defendants' willful conversion of the Plaintiffs' property, Plaintiffs are entitled to recover punitive damages from Defendants in an amount to be determined at trial.

14

## COUNT VI

**(Violation of the Tennessee Securities Act
Tenn. Code Ann. § 48-1-101, *et seq.*)**

80.     The allegations of paragraphs 1 through 79 of the Complaint are incorporated herein by reference.

81.     The investment opportunity sold to Plaintiffs by Defendants involved and constituted a "security" under the Tennessee Securities Act of 1980, Tenn. Code Ann. § 48-1-101 *et seq.*, namely an investment contract as contemplated by T.C.A. § 48-1-102(20). *See also King v. Pope*, 91 S.W.3d 314, 324–26 (Tenn. 2002).

82.     In connection with the offer and sale of the investment opportunity, Defendants employed devices, schemes, and artifices to defraud, made untrue statements of material facts and omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in acts, practices, and courses of business that operated as a fraud and deceit upon Plaintiffs, all in violation of Tenn. Code Ann. § 48-1-121(a).

83.     Plaintiffs reasonably relied upon the Defendants' representations and were deceived by Defendants, as set forth in this Complaint, and were unaware of the true facts. In reliance upon the Defendants' representations, the Plaintiffs wired $100,000 to Defendants. Plaintiffs would not have invested this money with Defendants had they been aware of Defendants' material misrepresentations and omissions.

84.     Defendants' wrongful conduct directly and proximately caused damages to Plaintiffs.

15

85.     As a result, Defendants are liable to Plaintiffs for damages in the amount of $100,000 plus interest, costs, and attorneys' fees, as provided under Tenn. Code Ann. § 48-1-122.

## COUNT VII

### (Civil Conspiracy)

86.     The allegations of paragraphs 1 through 85 of the Complaint are incorporated herein by reference.

87.     Defendants conspired and agreed among themselves, with knowledge of each other's intent, to induce Plaintiffs to invest in a fraudulent investment scheme with knowledge that the investment opportunity represented to the Plaintiffs was entirely illegitimate. Defendants did so knowingly and intentionally with intent to deceive Plaintiffs, using fraudulent misrepresentations to perpetrate their conspiracy to defraud Plaintiffs. Defendants also unlawfully conspired to fraudulently conceal and prevent Plaintiffs from knowing the fraudulent nature of their investment scheme. Accordingly, Plaintiffs are entitled to damages.

WHEREFORE, Plaintiffs demand:

1.     That proper process be issued and served upon the Defendants and that they be required to appear and answer this Complaint within the time prescribed by law;

2.     That Plaintiffs be awarded a judgment against the Defendants, jointly and severally, in an amount sufficient to compensate them in accordance with the law for the damages which they have suffered and all available remedies at law or in equity;

3.     That Plaintiffs be awarded treble damages;

16

4.     That Plaintiffs be awarded a judgment against Defendants for punitive damages in an amount sufficient to punish the Defendants for their misconduct and to deter the Defendants and others from similar misconduct in the future;

5.     That Plaintiffs be awarded pre-judgment and post-judgment interest on the damages they have suffered;

6.     That the costs of this action and reasonable attorneys' fees be awarded to the Plaintiffs;

7.     That Plaintiff be awarded such alternative and/or additional relief as the equities and justice may require; and

8.     That a jury be empaneled to try this cause.

<div align="center" style="margin-left:50%">

**NEAL & HARWELL, PLC**

By: _ /s/ Jeffrey A. Zager_
  Philip N. Elbert, No. 009430
  Jeffrey A. Zager, No. 032451
  Mozianio S. Reliford, III, No. 036170
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile
pelbert@nealharwell.com
jzager@nealharwell.com
treliford@nealharwell.com

*Counsel for Plaintiffs*

</div>

17